IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| CURT O. HALL, | ) | CIVIL ACTION NUMBER: |
| | ) | 6:19-CV-03316-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UBS FINANCIAL SERVICES, INC. AND | ) | |
| MARY LUCY REID, INDIVIDUALLY, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSES TO LOCAL RULE 26.03 INTERROGATORIES**

Defendants respond to the Interrogatories under Local Civil Rule 26.03 DSC as follows:

**INTERROGATORY NO. 1:** A short statement of the facts[1] of the case.

**ANSWER TO INTERROGATORY NO. 1:** Plaintiff Curt O. Hall ("Plaintiff") was branch manager of the Greenville, South Carolina office of UBS Financial Services, Inc. ("UBS"). Hall was an at-will employee. Defendant Mary Lucy Reid ("Reid") was an employee in the Greenville, South Carolina office. Plaintiff alleges that he and Reid attended a UBS happy hour organized by Plaintiff on September 1, 2017. Plaintiff alleges that he was concerned for Plaintiff's safety. Plaintiff further states that he invited Reid to stay overnight at his home, gave Reid a "European style consolatory cheek kiss" and texted Reid after he arrived at home. Plaintiff alleges that Reid "fabricated and exaggerated the events of September 1, 2017" when Reid reported Plaintiff's improper advances towards Reid during and after the September 1, 2017 happy hour event to UBS's Human Resources department. Plaintiff further states, without any additional factual details, that Reid fabricated stories about his relationships with other employees in the

---

[1] Defendants have also included a procedural history for the Court's edification.

Greenville office. According to Plaintiff, Reid conspired with an individual at UBS named Ryan McLaughlin to provide job security for Reid and to cause McLaughlin to be promoted in line with UBS's goals to promote women into top positions at UBS.

Plaintiff further alleges that in connection with his termination, UBS maliciously and negligently reported to the Financial Industry Regulatory Authority, Inc. ("FINRA") that he had been discharged for violating HR policies related to professional conduct.

Plaintiff's Complaint, filed in state court and removed to this Court, asserted seven causes of action:

1. Negligence against UBS.

2. Breach of Implied Covenant of Good Faith and Fair Dealing against UBS.

3. Breach of Fiduciary Duty against UBS.

4. Defamation against UBS.

5. Tortious Interference with a Contractual Relationship against Reid.

6. Defamation against Reid.

7. Conspiracy against Reid and McLaughlin.

Defendants removed the case to this Court on November 25, 2019, and the procedural history thereafter is somewhat complex. By its order of July 9, 2020 (ECF 25), the Court agreed with the Defendants' contention that Plaintiff had fraudulently joined Ryan McLaughlin as a defendant in order to prevent complete diversity and the removal of the case to federal court. Accordingly, the Court granted Defendants' motion to dismiss McLaughlin as fraudulently joined and denied Plaintiff's motion to remand.

In the course of considering the parties' motions, the Court determined that there was no controlling South Carolina law related to certain issues. Accordingly, on August 24, 2020, the

Court issued an Order of Certification with three certified questions for the South Carolina Supreme Court. On December 1, 2021, the decision by the South Carolina Supreme Court was filed with this Court (ECF 57).

The three certified questions that had been considered were:

I. Are terminable-at-will employment relationships contractual in nature as a matter of law?

II. Does the implied covenant of good faith and fair dealing arise in the context of terminable-at-will employment relationships, and can an employer's termination of an at-will employee constitute a breach of the relationship such that it may give rise to a claim by the former employee against the employer for breach of the implied covenant of good faith and fair dealing?

III. Can an employer's termination of an at-will employee, which results from a third-party employee's report to the employer, constitute a breach of the relationship such that it may give rise to a claim by the former employee against the third-party employee for tortious interference with a contractual relationship?

The South Carolina Supreme Court arrived at these conclusions based on their detailed analysis:

> We answer the first question "yes." We answer part A of the second certified question "yes," and we answer part B of that question "no." We answer the third certified question, as modified, "yes," and we have added that potential liability extends to third parties who are not fellow employees of the terminated employee.
>
> We have answered all questions under the assumption that no exception to the doctrine of at-will employment applies. In addition, our answers to these questions do not alter the established rule that, as long as an exception does not apply, an employer may terminate an at-will employee for any reason without incurring liability.

Defendants note that, before the Certification issue commenced, they filed a motion to compel arbitration and stay proceedings ("Motion to Compel Arbitration") (ECF No. 34). The Court has not ruled on the Motion to Compel Arbitration.

**INTERROGATORY NO. 2:** The names of fact witnesses likely to be called by the party and a brief summary of their expected testimony.

**ANSWER TO INTERROGATORY NO. 2:**

(a) Plaintiff

Plaintiff is expected to testify regarding his employment and the allegations in his Complaint.

(b) Mary Lucy Reid

Defendant Reid is expected to testify about the events related to the office happy hour on September 1, 2017, and her reports to UBS's HR Department.

(c) Charlotte Wolfe

Wolfe is expected to testify regarding her knowledge of the matters identified in the Complaint, specifically including the investigation of internal complaints.

(d) Mark Baccus

Baccus is expected to testify regarding his knowledge of the matters identified in the Complaint, specifically UBS' reporting to FINRA.

(e) At this time, Defendants cannot identify additional witness who may be called to testify. Defendants reserve the right to name additional witnesses during discovery. Defendants will supplement this response in the event other witnesses are identified.

**INTERROGATORY NO. 3:** The names and subject matter of expert witnesses (if no witnesses have been identified, the subject matter and field of expertise should be given as to experts likely to be offered).

**ANSWER TO INTERROGATORY NO. 3:** At this time, Defendants have not identified any expert witnesses. Defendants reserve the right to identify expert witnesses during discovery.

**INTERROGATORY NO. 4:** A summary of the claims or defenses with statutory and/or case citations supporting the same.

**ANSWER TO INTERROGATORY NO. 4:** The claims that remain against UBS and Reid are as follows:

Negligence

Plaintiff alleges that UBS breached its duty of care to Plaintiff by failing to fully investigate the allegations brought forth against Plaintiff and by its reporting to FINRA. UBS denies Plaintiff's allegations and asserts that under the controlling case law, a negligence claim in this context falls squarely within the "exclusivity provision" of the South Carolina Workers' Compensation Act. *See, e.g.*, *Sabb v. S.C. State Univ.,* 350 S.C. 416, 422, 567 S.E.2d 231, 234 (2002).

Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff alleges that UBS violated the implied covenant of good faith and fair dealing by not fully investigating the allegations brought forth against Plaintiff. Defendant denies Plaintiff's allegations and asserts that there can be no claim for breach of an implied covenant of good faith and fair dealing by Plaintiff as confirmed by the South Carolina Supreme Court in the response to Certified Question II, above. (*See* ECF 57).

5

Breach of Fiduciary Duty

Plaintiff alleges that UBS violated its fiduciary duty by not fully investigating the allegations brought forth against Plaintiff. UBS denies Plaintiff's allegations because "there is no fiduciary relationship in a normal employer-employee relationship." *McClurkin v. Champion Labs. Inc.*, No. 0:11-cv-02401-CMC, 2011 U.S. Dist. LEXIS 129006, at *11 (D.S.C. Nov. 8, 2011) (granting defendant's motion to dismiss plaintiff's breach of fiduciary duty claim asserted against his employer); *see also Warner v. Lexington Med. Ctr.*, No. 3:17-1936-JFA-PJG, 2018 U.S. Dist. LEXIS 99072, at *4-6 (D.S.C. Jun. 12, 2018) (granting defendant's motion to dismiss plaintiff's claim because "there is no fiduciary relationship between the Plaintiff and her employer"); *Wired Fox Techs., Inc. v. Estep*, No. 6:15-331-BHH, 2017 U.S. Dist. LEXIS 43993, at *22 (D.S.C. Mar. 27, 2017) (*In re Hunnicut*, 466 B.R. 797, 801 (Bankr. D.S.C. 2011)) ("[A] mere employer-employee relationship is not sufficient to create a fiduciary duty under South Carolina law.").

Defamation

Plaintiff alleges that UBS defamed him by publishing a false statement to FINRA in the form of the filing of a Form U5.

To state a cause of action for defamation under South Carolina law, "a plaintiff must show the existence of some message that (1) is defamatory, (2) is published with actual or implied malice, (3) is false, (4) is published by the defendant, (5) concerned the plaintiff, and (6) resulted in legally presumed or in special damages." *Sellers*, No. 3:11-2163-CMC-JRM, at *18 (citing *Parker v. Evening Post Publ. Co.*, 317 S.C. 236, 452 S.E.2d 640, 644 (Ct. App. 1994)).

The only statements Plaintiff's Complaint asserts that UBS made are not defamatory in nature, are true, and are protected by multiple privileges. This includes an absolute privilege applicable to UBS. In South Carolina, a privilege is extended to protect communications to and

6

from organizations that "exercise[] quasi-judicial powers" such as "in the licensing and revocation of licenses." *Johnson v. Independent Life Accident Ins. Co*., 94 F. Supp. 959, 963-64 (E.D.S.C. 1951) (citing cases) (extending absolute privilege to protect communications from defendant insurance company to insurance commission regarding recent termination of plaintiff employee). FINRA is a quasi-judicial body, a self-regulatory organization (SRO) that enforces the Securities Exchange Act ("the Exchange Act") and oversees securities licensing. As a FINRA Member firm, UBS is required to report to FINRA the termination of any associated person within thirty (30) days of the termination. Moreover, UBS is required to report the reason for the termination. As such, UBS' communications to FINRA regarding Plaintiff's termination are protected from a defamation suit by absolute privilege. UBS' report to FINRA of Plaintiff's termination was mandatory. *See* FINRA Rule 4530(a)(2), available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/4530.

Here, the only allegedly defamatory communications Plaintiff's Complaint alleges UBS made was its reporting that "Plaintiff had been discharged for '[v]iolation of HR policies related to professional conduct." Compl. ¶ 31. This reporting to FINRA of Plaintiff's termination falls squarely within the reporting requirements set forth above and is the reason Plaintiff was terminated. *Id*. Thus, UBS' mandatory communications to FINRA are clearly protected by the doctrine of absolute privilege.

<u>Tortious Interference with a Contractual Relationship (Reid only)</u>

Plaintiff alleges that Reid, his co-worker, intentionally procured the breach of Plaintiff's employment agreement with UBS through her "scheme" with McLaughlin. Reid denies Plaintiff's allegations. Regardless, as confirmed by the South Carolina Supreme Court in the response to the Certified Question Number 3, a third-party employee's report to the employer does not constitute

7

a breach of the relationship such that it may give rise to a claim by the former employee against the third-party employee for tortious interference with a contractual relationship when the alleged person in question is a co-worker of the accused. This cause of action is limited in "that potential liability extends to third parties who are **not** fellow employees of the terminated employee" (See, Order on Certified Question, emphasis added). As a result, this claim has no merit.

<u>Defamation (against Reid)</u>

Plaintiff alleges Reid defamed Plaintiff. However, Plaintiff's Complaint fails to assert a specific defamatory statement was ever made by Reid. And, even if such a statement was made, it is nevertheless protected from this suit by a qualified privilege. To state a cause of action for defamation, "a plaintiff must show the existence of some statement that (1) is defamatory, (2) is published with actual or implied malice, (3) is false, (4) is published by the defendant, (5) concerned the plaintiff, and (6) resulted in legally presumed or in special damages." *Sellers*, No. 3:11-2163-CMC-JRM, at *18 (citing *Parker v. Evening Post Publ. Co.*, 317 S.C. 236, 452 S.E.2d 640, 644 (Ct. App. 1994)).

Plaintiff's Complaint falls short on not just one, but multiple accounts. First, Plaintiff's Complaint admits the alleged events did in fact take place. Thus Plaintiff is left with only allegations of "fabricated and exaggerated misrepresentations" made without any specificity. Compl. ¶¶ 29, 58. Plaintiff failed to plead the details of the alleged defamatory exchange. Plaintiff's failure to identify to whom Reid made the statements at issue and what statements were allegedly made further constitutes a complete failure to plead the required element of publication. *Campbell v. Intl Paper Co.,* No. 12-3042, 2013 WL 1874850, at *4 (D.S.C. May 3, 2013) (finding that plaintiff had not sufficiently pleaded the element of publication to a third party because plaintiff failed to allege "to whom the defendants made the statements at issue.").

Moreover, even if Plaintiff's Complaint did state a valid defamatory statement was made, which it does not, any such statement would give rise to a qualified privilege. To be insulated from suit, the required elements of a qualified privileged communication are: (1) good faith; (2) an interest to be upheld; (3) statement limited in scope to this purpose; (4) a proper occasion; and (5) publication in a proper manner to proper parties. *Bell v. Saturday Evening Post Publ. Co*., 459 S.E.2d 315, 317 (Ct. App. 1995). Our Supreme Court has specifically "recognized a qualified privilege attache[s] to communications between an employer and employee" in the "proper occasion" of reporting and investigating "alleged misconduct of [an] employee." *Wright v. Sparrow*, 298 S.C. 469, 474, 381 S.E.2d 503, 504 (Ct. App. 1989) (citing *Bell v. Bank of Abbeville*, 208 S.C. 490, 493, 38 S.E.2d 641 (1946)) (holding communications between employees regarding plaintiff's performance issues and potential termination and the investigation into the same was protected by qualified privilege); *see also Carter v. Morgan*, 34 Fed. Appx. 427, 429 (4th Cir. 2002) (citing *Happy 40, Inc. v. Miller*, 63 Md. App. 24 (Ct. Spec. App. 1985)) (holding communications between employees was protected by qualified privilege). Here, any statement by Reid was made in the context of an internal complaint to human resources and subsequent investigation into Plaintiff's misconduct. Therefore, qualified privilege attaches and insulates Reid from Plaintiff's defamation claim.

<u>Conspiracy (against Reid)</u>

This claim is duplicative of that brought against former defendant McLaughlin, which was dismissed against McLaughlin. For the same reasons McLaughlin was dismissed, Reid should similarly be dismissed from a conspiracy cause of action. In addition, this claim cannot survive because a "conspiracy" to terminate an at-will employee, such as Plaintiff, is not recognized by our courts due to the nature of at-will employment as terminable at any time by either party for

9

any reason or no reason at all. See, e.g., *Ross*, 273 S.C. at 765, 259 S.E.2d at 815 (holding plaintiff failed to state a cause of action of conspiracy to terminate plaintiff's employment because his employment was at-will); see also *Angus v. Burroughs Chapin Co.*, 358 S.C. 498, 596 S.E.2d 67 (Ct. App. 2004) (same), rev'd on unrelated grounds, 368 S.C. 167, 628 S.E.2d 261 (2006). Conspiracy claims are also not allowed unless there is involvement of "two or more persons." In South Carolina, intracorporate "conspiracies" do not constitute conspiracies for purposes of civil suit because such "conspiracies" involve only a single entity. *McMillan v. Oconee Mem'l Hosp., Inc.*, 367 S.C. 559, 564, 626 S.E.2d 884, 886-87 (2006). In other words, "a corporation cannot conspire with itself," whether the alleged "conspiracy" was between the corporate officials, employees, or other agents. *Id.*; see also 16 Am. Jur. 2d Conspiracy § 56 (2005) ("[A] corporation cannot be a party to a conspiracy."). Thus, Plaintiff cannot, as he attempts to do here, maintain a civil conspiracy action against two UBS employees such as Ms. Reid and Ms. McLaughlin related to an employee's an internal report to UBS.

**INTERROGATORY NO. 5:** Absent special instructions from the assigned judge, the parties shall propose dates for the following deadlines listed in Local Civil Rule 16.02:

(a)     Exchange of Fed. R. Civ. P. 26(a)(2) expert disclosures; and

(b)     Completion of discovery.

**ANSWER TO INTERROGATORY NO. 5:** Defendants agree that the current deadlines established by the Conference and Scheduling Order (ECF No. 59) are appropriate at this time.

**INTERROGATORY NO. 6:** The parties shall inform the Court whether there are any special circumstances which would affect the time frames applied in preparing the scheduling order. *See generally* Local Civil Rule 16.02(C) (Content of Scheduling Order).

**ANSWER TO INTERROGATORY NO. 6:** None identified at this time. However, Defendants note that a ruling on their Motion to Compel Arbitration has not been issued.

**INTERROGATORY NO. 7:** The parties shall provide any additional information requested in the Pre-Scheduling Order (Local Civil Rule 16.01) or otherwise requested by the assigned judge.

**ANSWER TO INTERROGATORY NO. 7:** The parties have agreed to waive initial disclosures under Rule 26(a)(1) of the Federal Rules of Civil Procedure.

Dated this 12th day of January, 2022.

        OGLETREE, DEAKINS, NASH,
         SMOAK & STEWART, P.C.

        By:   s/Ashley P. Cuttino
        Ashley P. Cuttino (Fed. ID 9215)
        The Ogletree Building
        300 North Main Street
        Suite 500 (29601)
        Post Office Box 2757
        Greenville, South Carolina 29602
        Phone: 864.271.1300
        Fax: 964.235.8806
        ashley.cuttino@ogletree.com

        **Attorneys for Defendants UBS Financial Services Inc. and Mary Lucy Reid**

49900491.1