# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| Curt O. Hall, ) | |
| ) | C.A. No.: 6:19-CV-03316-TMC |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **AMENDED COMPLAINT** |
| UBS Financial Services Inc. and Mary Lucy Reid, ) | |
| Individually, ) | |
| ) | |
| Defendants. ) | |
| ) | |

COMES NOW, Plaintiff Curt O. Hall ("Plaintiff"), complaining of the defendants, UBS Financial Services Inc. ("UBS"), Mary Lucy Reid ("Reid"), Individually, and Ryan McLaughlin ("McLaughlin"), Individually, and would show the following:

1.  Plaintiff is an individual who resides in Greenville, South Carolina.

2.  Upon information and belief, UBS is a global financial services firm and, at all times mentioned herein, was transacting business in Greenville County, South Carolina.

3.  Upon information and belief, Reid is an individual and resident of the State of Georgia and, at all times mentioned herein, was working for UBS in Greenville County, South Carolina.

4.  Upon information and belief, McLaughlin is an individual and resident of the State of South Carolina and, at all times mentioned herein, was working for UBS.

5.  At all times relevant to the case, Plaintiff was the Branch Manager at UBS for the Greenville, South Carolina office.

6.      As part of Plaintiff's duties in managing the Greenville office, Plaintiff routinely organized team building, relational, social outings with the Greenville team itself and with other UBS teams or personnel visiting Greenville.

7.      On September 1, 2017, a UBS client service associate asked Plaintiff to organize a happy hour and Plaintiff, accordingly, did so at Nose Dive, a restaurant in downtown Greenville.

8.      Reid, along with several other UBS personnel, attended the September 1, 2017 happy hour.

9.      At the happy hour, Reid told Plaintiff and others that she believed she and her boyfriend at the time were going to separate and that she was scared to go home.

10.     As the happy hour continued, Reid continued to relay to Plaintiff and others that she was concerned about going home.

11.     Plaintiff, concerned for Reid's safety and well-being, asked Reid how he could help; including offering her a place to stay for the evening.

12.     After the happy hour, Plaintiff invited all participants of the happy hour to join him for dinner down the street.

13.     Reid and a friend of Reid's decided to join Plaintiff for dinner.

14.     At dinner, Reid continued to relay to Plaintiff and her friend about her personal problems.

15.     After dinner, Reid and her friend insisted that they give Plaintiff a ride home instead of Plaintiff taking an Uber ride.

16.     Plaintiff accepted and sat in the back seat of the vehicle.

17.     After being seated, Reid, despite the front passenger seat being available, got in the back of the vehicle and Reid's friend drove Plaintiff home.

18. Upon arriving at his home, Plaintiff asked Reid if she was going to be okay and Reid responded affirmatively.

19. Upon hearing Reid respond affirmatively, Plaintiff gave Reid a European-style consolatory cheek kiss and exited the car.

20. Later that evening, still concerned for Reid's safety and well-being, Plaintiff messaged Reid to ensure she was okay and again offered her a place to stay for the evening if she needed it. Plaintiff further stated that he was outside playing with his dog.

21. Reid wrote back regarding the dog and that was the end of the events of September 1, 2017.

22. Further, other than a prior United Way campaign trip to Costco, Plaintiff had never been one on one with Reid and had never asked Reid to do anything one on one.

23. Upon information and belief, prior to October 2017, Reid was concerned about her job performance with UBS.

24. Upon further information and belief, Reid conspired with McLaughlin to create plan wherein Reid would gain job security and wherein McLaughlin would be promoted in line with UBS's goals of advancing females into top positions within the company.

25. Upon further information and belief, in conjunction with their plan, Reid fabricated and exaggerated the events of September 1, 2017, Plaintiff's general advances towards her and Plaintiff's relationships with other employees in the Greenville office to the Human Resources department at UBS.

26. Thereafter, on or around October 3, 2017, Plaintiff was questioned by a UBS Human Resources associate about the events of September 1, 2017, wherein Plaintiff fully explained the sequence of events and the circumstances related to the events.

27. Plaintiff was never informed of the baseless allegations related to Plaintiff's relationships with other employees in the Greenville office.

28. Despite a clear compliance record, success as a branch manager and wonderful reviews from all on the Greenville team but for Reid, UBS took no further efforts to corroborate the truth of the events of September 1, 2017 and/or Plaintiff's relationships with other employees in the Greenville office.

29. As the direct and proximate result of Reid and McLaughlin's scheme, the resulting fabricated and exaggerated misrepresentations of the events of September 1, 2017 and Plaintiff's relationships with Reid and other employees in the Greenville office and UBS's cursory investigation, UBS terminated Plaintiff on October 17, 2017.

30. Upon information and belief, UBS's decision to terminate Plaintiff was based on its goals of advancing females into top positions within the company and that was why UBS only performed a cursory investigation into the allegations against Plaintiff.

31. In connection with the termination, UBS maliciously and negligently reported to Financial Industry Regulatory Authority, Inc. ("FINRA") that Plaintiff had been discharged for "[v]iolation of HR policies related to professional conduct."

32. As the direct and proximate result of UBS's malicious and negligent reporting and the resulting disparagement to Plaintiff's name, Plaintiff lost numerous employment opportunities.

33. Additionally, as the direct and proximate result of UBS's termination, Plaintiff was deprived his compensation and bonuses and not refunded his legitimate business expenses.

34. Jurisdiction and venue are proper in this Court.

**FOR A FIRST CAUSE OF ACTION**

**(Negligence - UBS)**

35.     Plaintiff realleges the foregoing paragraphs consistent with this cause of action as if fully restated verbatim herein.

36.     UBS owed Plaintiff a duty of care to protect Plaintiff against the foreseeable risk of harm from its actions and inactions.

37.     UBS failed to exercise to reasonable care and breached its duty of care to Plaintiff by failing to fully investigate the allegations brought forth against Plaintiff and by its reckless reporting to FINRA.

38.     As a direct and proximate result of Plaintiff's breach, Defendant has been damaged in an amount to be determined at trial, for which it hereby sues together with attorneys' fees, costs, and interest.

**FOR A SECOND CAUSE OF ACTION**
**(*Breach of Contract* - UBS)**

39.     Plaintiff realleges the foregoing paragraphs consistent with this cause of action as if fully restated verbatim herein.

40.     In connection with his employment agreement with UBS, UBS had an implied duty to act in good faith and deal fairly with Plaintiff.

41.     UBS breached the contract by violating the implied covenant of good faith and fair dealing in not fully investigating the allegations brought forth against Plaintiff and its self-dealing on advancing its own goals.

*42.*     ***UBS further breached the contract by violating the implied covenant of good faith and fair dealing in not fully investigating the allegations brought forth against Plaintiff and then recklessly reporting to FINRA that Plaintiff was terminated for "[v]iolation of HR policies related to professional conduct.***"

5

43. As a direct and proximate result of UBS's breach of *contract*, Plaintiff has been damaged in an amount to be determined at trial, for which it hereby sues together with attorneys' fees, costs, and interest.

### FOR A THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty - UBS)

44. Plaintiff realleges the foregoing paragraphs consistent with this cause of action as if fully restated verbatim herein.

45. By and through the employment agreement, Plaintiff reposed special confidence in UBS.

46. Accordingly, UBS had a fiduciary duty to act in good faith and with due regard to Plaintiff's interests.

47. UBS breached that duty by intentionally failing to fully investigate the allegations brought forth against Plaintiff and self-dealing to advance its own goals.

48. As a direct and proximate result of UBS's breach, Plaintiff has been damaged in an amount to be determined at trial, for which it hereby sues together with attorneys' fees, costs, and interest.

### FOR A FORTH CAUSE OF ACTION
### (Defamation - UBS)

49. Plaintiff realleges the foregoing paragraphs consistent with this cause of action as if fully restated verbatim herein.

50. UBS published, in its reporting to FINRA, that Plaintiff had been discharged for "[v]iolation of HR policies related to professional conduct."

51. The false statement UBS published about Plaintiff had a defamatory meaning and was published with malice.

52. As a direct and proximate result of UBS's defamatory statement, Plaintiff has suffered identifiable economic loss, for which it hereby sues together with attorneys' fees, costs, and interest.

## FOR A FIFTH CAUSE OF ACTION
### (Tortious Interference with a Contractual Relationship - Reid)

53. Plaintiff realleges the foregoing paragraphs consistent with this cause of action as if fully restated verbatim herein.

54. As a co-employee of Plaintiff's at UBS, Reid had knowledge of Plaintiff's contractor for employment with UBS.

55. Upon information and belief, Reid, by and through her scheme with McLaughlin, intentionally *interfered with Plaintiff's contract for employment with UBS*.

56. Reid's interference with Plaintiff's contract for employment with UBS was without justification.

57. As a direct and proximate result of Reid's interference, Plaintiff has suffered identifiable economic loss, for which it hereby sues together with attorneys' fees, costs, and interest.

## FOR A SIXTH CAUSE OF ACTION
### (Defamation - Reid)

58. Plaintiff realleges the foregoing paragraphs consistent with this cause of action as if fully restated verbatim herein.

59. Reid, in her reporting to UBS, fabricated and exaggerated misrepresentations of the events of September 1, 2017 and Plaintiff's relationships with Reid and other employees in the Greenville office.

60. The false statements Reid published about Plaintiff had a defamatory meaning and was published with malice.

61. As a direct and proximate result of Reid's defamatory statements, Plaintiff has suffered identifiable economic loss, for which it hereby sues together with attorneys' fees, costs, and interest.

WHEREFORE, the Plaintiff Curt O. Hall, prays for:

a)  Judgment against Defendant UBS Financial Services Inc. in an amount to be determined at trial;

b)  Judgment against Defendant Mary Lucy Reid in an amount to be determined at trial;

c)  Attorneys' fees;

d)  Punitive Damages;

e)  Special Damages;

f)  Costs of this action;

g)  Such other and further relief that this Court deems just and proper.

Respectfully submitted this 16th day of February 2022,

TOWNES B. JOHNSON III, LLC

/s/ Townes B. Johnson III
Townes B. Johnson III (Fed Bar# 10046)
P.O. Box 9246
Greenville, SC 29604
PH:    (864) 757-4899
tjohnson@sc.legal

*Attorneys for Plaintiff*

Greenville, South Carolina