**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Curt O. Hall, )<br>)<br>              Plaintiff, )<br>)<br>vs. )<br>)<br>UBS Financial Services, Inc., and )<br>Mary Lucy Reid, )<br>)<br>             Defendants. )<br>_____) | Civil Action No. 6:19-cv-3316-TMC<br><br><br>**ORDER** |

This matter is before the court on Defendants' joint motion to compel arbitration and stay litigation. (ECF No. 90). Plaintiff filed a response in opposition to this motion (ECF No. 96), and Defendants replied (ECF No. 102). Accordingly, this matter is now ripe for review. Having carefully reviewed the parties' briefing and the record in this case, the court concludes a hearing is unnecessary to decide this matter.

**FACTS AND PROCEDURAL HISTORY**[1]

In September 2017, Plaintiff was employed with Defendant UBS Financial Services, Inc. ("UBS") as the Branch Manager of UBS's Greenville, South Carolina office. *See* (ECF No. 87 at 1–2). As part of his duties, Plaintiff routinely organized team-building activities and social outings for both the Greenville office staff and other visiting UBS personnel. *Id*. at 2. On September 1, 2017, at the request of another employee, Plaintiff organized a happy hour at a restaurant in downtown Greenville. *Id*. Several UBS employees, including Defendant Reid, attended the happy

---

[1] These facts are taken from Plaintiff's Amended Complaint, as the court must accept Plaintiff's factual allegations as true for purposes of Defendants' motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor must the court "accept as true unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts. Inc. v. J.D. Assocs., LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

1

hour. *Id*. According to Plaintiff, throughout the event Reid repeatedly mentioned that she was having issues with her boyfriend and was scared to go home. *Id*. Out of concern for her safety, Plaintiff asked Reid how he could help and offered to let her stay at his home for the evening. *Id*.

When the happy hour ended, Plaintiff invited everyone still present to dinner at a nearby restaurant; however, only Reid and one of her friends decided to join him. *Id*. During dinner, Reid continued to discuss her problems at home. *Id*. Afterwards, Reid and her friend offered to give Plaintiff a ride home, which he accepted, and Reid joined Plaintiff in the backseat while her friend drove. *Id*. When they arrived at his home, Plaintiff again asked Reid if she would be alright, and she confirmed that she would. *Id*. at 3. Plaintiff then gave Reid "a European-style consolatory cheek kiss" and got out of the car. *Id*. Later in the evening, still concerned for Reid's well-being, Plaintiff sent Reid a text message to again confirm that she was okay, repeating his offer for her to stay with him if she needed and noting that he was outside with his dog. *Id*. Reid replied to Plaintiff's comment about his dog but made no response regarding his offer for her to stay with him. *Id*. According to Plaintiff, "other than a prior United Way campaign trip to Costco, Plaintiff had never been one on one with Reid and had never asked Reid to do anything one on one" before the evening of September 1, 2017. *Id*.

Plaintiff alleges that, prior to October 2017, Reid was concerned about her job performance with UBS. *Id*. Consequently, Reid developed a plan with Ryan McLaughlin ("McLaughlin"), another UBS employee, whereby "Reid would gain job security and . . . McLaughlin would be promoted in line with UBS's goals of advancing females into top positions within the company." *Id*. As part of this plan, Plaintiff asserts that Reid "fabricated and exaggerated the events of September 1, 2017, Plaintiff's general advances towards her and Plaintiff's relationships with other employees in the Greenville office" to UBS's Human Resources Department ("HR"). *Id*. As a

result of Reid's report to HR, on October 3, 2017, Plaintiff was questioned regarding what happened on the evening of September 1, 2017. *Id*. During the interview, Plaintiff "fully explained the sequence of events and the circumstances related to the events." *Id*. However, "UBS took no further efforts to corroborate the truth of the events of September 1, 2017 and/or Plaintiff's relationships with other employees in the Greenville office." *Id*. at 4. On October 17, 2017, UBS terminated Plaintiff's employment. *Id*.

Additionally, after terminating Plaintiff, UBS reported to the Financial Industry Regulatory Authority, Inc. ("FINRA") that Plaintiff had been discharged for violating HR policies regarding professional conduct. *Id*. Plaintiff claims that, due to UBS's report to FINRA "and the resulting disparagement to Plaintiff's name," he has lost multiple employment opportunities. *Id*.

*The Instant Action*

The procedural history of this case is long and somewhat complicated. Plaintiff originally brought this action in South Carolina state court against Defendants and McLaughlin alleging state-law claims for negligence, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, defamation, tortious interference with a contractual relationship, and common law civil conspiracy. (ECF No. 1-1 at 5–13). On November 25, 2019, Defendants removed the action to this Court based on diversity jurisdiction, asserting that Plaintiff had fraudulently joined McLaughlin to prevent complete diversity. (ECF No. 1). On December 19, 2019, Plaintiff filed a motion to remand the case to state court. (ECF No. 14). On July 9, 2020, the undersigned denied Plaintiff's motion, dismissed McLaughlin as fraudulently joined, and dismissed Plaintiff's claims for civil conspiracy against both Defendant Reid and McLaughlin.[2] (ECF No. 25).

---

[2] McLaughlin had filed a motion to dismiss (ECF No. 8), which was consequently denied as moot when McLaughlin was dismissed as a defendant to the case. (ECF No. 25 at 8 n.3).

Defendants UBS and Reid had also filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 6; 7). Upon considering their motions, the undersigned determined there was conflicting South Carolina precedent regarding certain claims raised by Plaintiff and identified three questions for certification to the South Carolina Supreme Court. Prior to certifying the questions, the court held an informal telephone conference with the parties' counsel informing them of the coming certification and directing them to consult with the parties and alert the court to any objections. (ECF No. 30). Rather than communicating any specific objection to the certification, Defendants withdrew their motions to dismiss (ECF Nos. 6; 7) and filed their first motion to compel arbitration and stay all further proceedings in this case on August 19, 2020. (ECF No. 34). Nevertheless, having received no objections, the court certified the three questions to the South Caroline Supreme Court on August 24, 2020, and subsequently stayed all motions and action in this matter pending a response from South Carolina Supreme Court, which the court received on December 1, 2021. (ECF Nos. 36; 38; 57).

After the case was returned to this court, Plaintiff moved to amend his Complaint, (ECF No. 78), and the court granted his motion, (ECF No. 86). The Amended Complaint was filed on March 16, 2022, and asserted claims for negligence, breach of contract, breach of fiduciary duty, and defamation against UBS and for defamation and tortious interference with a contractual relationship against Reid. (ECF No. 87). Defendants filed their renewed motion[3] to compel arbitration and stay proceedings shortly thereafter, on April 6, 2022, (ECF No. 90).

---

[3] Defendants' original motion to stay and compel arbitration (ECF No. 34) was denied as moot with leave to refile when the court granted Plaintiff's motion to amend the complaint. (ECF No. 86).

4

**DISCUSSION**

*I.     Parties' Arguments*

In their motion, Defendants argue that all of Plaintiff's claims are subject to mandatory arbitration pursuant to the Employment Arbitration Agreement executed between UBS and Plaintiff on June 8, 2017 (the "Employment Agreement"), and FINRA's By-Laws and Rules. *See* (ECF No. 90-4). Specifically, Defendants assert that the Employment Agreement requires Plaintiff to resolve through binding arbitration all claims against UBS or its employees "arising out of or relating to Plaintiff's 'prospective or actual employment . . . terms or conditions of employment with UBS . . . or the termination thereof, including but not limited to contract, tort, defamation, breach of fiduciary duty and other common law claims . . . and any claims arising under or relating to any federal, state or local constitution, statute or regulation.'" *Id*. at 4 (quoting ECF No. 90-1 at 3) (internal emphasis omitted). Additionally, Defendants contend that, at all times relevant to Plaintiff's claims, UBS was a member of FINRA and both Plaintiff and Reid were registered with FINRA through their employment with UBS. *Id*. at 6. Accordingly, Defendants assert that all parties are subject to the Rules and By-Laws of FINRA, which "expressly require that 'a dispute must be arbitrated under the FINRA Code of Arbitration Procedure for Industry Disputes if the dispute arises out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons.'" *Id*. (quoting FINRA Code of Arbitration Procedure for Industry Disputes, Rule 13200(a), https://www.finra.org/arbitration-mediation/printable-code-arbitration-procedure-13000#13200 (last visited Oct. 20, 2022)).

In his Response, Plaintiff does not dispute that his claims are subject to mandatory arbitration under either the Employment Agreement or FINRA Rule 13200(a). *See* (ECF No. 96).

5

Instead, the only argument Plaintiff raises in response is that Defendants have waived their right to compel arbitration based on the "extensive length of time [that has] transpired between the commencement of the action and the commencement of Defendant's [sic] motion[,] and a substantial prejudice against [Plaintiff] by the delay." *Id*. at 2 (citing *Rhodes v. Benson Chrysler-Plymouth*, 374 S.C. 122, 126, 647 S.E.2d 249, 251 (Ct. App. 2007)). Plaintiff relies on the South Carolina Court of Appeals' opinion in *Rhodes*, which established the following three-factor test for determining if a party has waived its right to compel arbitration:

> (1) whether a substantial length of time transpired between the commencement of the action and the commencement of the motion to compel arbitration; (2) whether the party requesting arbitration engaged in extensive discovery before moving to compel arbitration; and (3) whether the non-moving party was prejudiced by the delay in seeking arbitration.

*Id*. at 2–3 (quoting *Rhodes*, 374 S.C. at 126, 647 S.E.2d at 251). Plaintiff concedes that there has been no discovery exchanged in this case, and instead centers his argument on the delay in Defendants' filing of their motion. *Id*. at 3. In particular, Plaintiff asserts that Defendants' motion to compel was not filed until 303 days after the filing of Plaintiff's initial Complaint and that, by removing the case from state court, Defendants chose to litigate these claims in federal court, effectively waiving their right to compel arbitration. *See id*. Plaintiff also makes a single, vague assertion that he "will be even further prejudiced" if his claims are not permitted to proceed in this court, although he makes no claim or argument as to how has been prejudiced in the first place. *Id*. at 3.

Defendants addressed this argument regarding waiver in their motion as well as their reply. (ECF Nos. 90-4; 102). They noted that the burden of proving waiver rests on the party opposing arbitration, who must "'show[] prejudice through an undue burden caused by a delay in the demand for arbitration.'" (ECF No. 90-4 at 9–10 (quoting *Gen. Equip. & Supply Co., Inc. v. Keller Rigging*

6

*& Constr. S.C., Inc.*, 344 S.C. 553, 556, 544 S.E.2d 643, 645 (Ct. App. 2001)) (citing *Wilson v. Willis*, 416 S.C. 395, 420–21, 786 S.E.2d 571, 584 (Ct. App. 2016), *rev'd on other grounds by* 426 S.C. 326, 827 S.E.2d 167 (2019))). Applying the same three-factor test set forth in *Rhodes*, Defendants argue that Plaintiff cannot establish that they waived their right to compel arbitration. As to the first factor, Defendants assert that their motion was "filed in response to an Amended Complaint which essentially restarts this litigation." *Id*. at 10. Additionally, Defendants note that, "to date, no discovery has occurred in this matter." *Id*. Thus, Defendants contend that "[b]y seeking to compel arbitration prior to conducting any discovery and after the filing of the Amended Complaint, [Defendants] clearly ha[ve] not waived [their] right to arbitration." *Id*. Defendants also cite to three South Carolina appellate court opinions which held that periods up to thirteen months between the commencement of the action and the filing of the motion to compel in which limited discovery was completed did not amount to waiver of the right to compel arbitration. *Id*. at 10–11 (citing *Toler's Cove Homeowners Ass'n, Inc. v. Trident Constr. Co., Inc*., 355 S.C. 605, 612, 586 S.E.2d 581, 585 (2003); *Rich v. Walsh*, 357 S.C. 64, 72–73, 590 S.E.2d 506, 510–11 (Ct. App. 2003); *Gen. Equip. & Supply Co*., 344 S.C. at 556–57, 544 S.E.2d at 645–46).

    II.    *Analysis*

As an initial matter, to the extent Plaintiff attempts to argue that Defendants waived their right to compel arbitration simply by removing this action to federal court, Plaintiff has identified no case law supporting this contention nor is the court aware of any. Therefore, the court rejects Plaintiff's argument to the extent he relies on Defendants' removal to this court.

Both South Carolina state courts and the courts have this circuit have recognized that, while the length of time between the commencement of an action and the filing of a motion to compel arbitration is relevant to the waiver analysis, delay alone is insufficient to establish waiver and the

crux of the analysis turns, instead, on the showing of prejudice to the non-moving party. *See, e.g.*, *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 703 (4th Cir. 2012) (holding that "a delay of several months, without more, is insufficient to demonstrate the opposing party suffered actual prejudice"); *Oyekan v. Ed. Corp. of Am.*, Civ. A. No. 4:18-cv-01785-RBH, 2019 WL 978865, at *5 (D.S.C. Feb. 28, 2019) (quoting *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001)) (noting that a party may only be found to have waived its right to compel arbitration if he or she "so substantially utilizes the litigation machinery that to subsequently permit arbitration would prejudice the other party" and, "[e]ven in cases where the party seeking to arbitrate has invoked the 'litigation machinery' to some degree, the dispositive question is whether the opposing party suffered actual prejudice" (internal quotation marks omitted)); *Rich*, 357 S.C. at 72, 590 S.E.2d at 510 (noting "mere delay, regardless of its duration, should not be considered as a factor independent of the actual prejudice it occasions"). Thus, it is well-established that "the waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." *Oyekan*, 2019 WL 978865 at *5 (citing *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985)). The heavy burden of proving waiver falls on the party opposing arbitration, and "'[a]ny doubts as to whether the party has waived its right to compel arbitration must be resolved in favor of arbitration.'" *Optical Mechanics, Inc.*, 2021 WL 461796 at *7 (quoting *Am. Reliable Ins. Co. v. Stillwell*, 212 F. Supp. 2d 621, 628 (N.D. W. Va. 2002), *aff'd*, 336 F.3d 311 (4th Cir. 2003)). Accordingly, "[w]aiver is not to be inferred lightly." *Oyekan*, 2019 WL 978865 at *5.

In this case, Plaintiff has put forth no concrete facts nor made any specific argument to show how he has been prejudiced, if at all, by the delay in Defendants' seeking to compel arbitration. "This alone is fatal to [P]laintiff's argument." *Skinner v. Garry*, Civ. No. ELH-19-

3559, 2020 WL 4784768, at *9 (D. Md. Aug. 18, 2020).  Therefore, the court finds that Plaintiff has failed to carry his burden of establishing waiver by Defendants of their right to compel arbitration.  Moreover, by failing to respond to Defendants' arguments concerning the mandatory arbitration requirements of the Employment Agreement and FINRA's Rules and By-Laws, Plaintiff concedes that his claims are subject to mandatory, binding arbitration pursuant to the foregoing.  Thus, as Defendants' note in their motion, because all the claims at issue in this case are subject to arbitration, dismissal, rather than a stay, is the proper remedy.  *Choice Hotels, Inc. v. BSR Tropicana Resort, Inc*., 252 F.3d 707, 709–10 (4th Cir. 2001); *see also* (ECF No. 90-4 at 3).

## CONCLUSION

Accordingly, the court **GRANTS** Defendants' Motion to Compel Arbitration (ECF No. 90) and **DISMISSES** Plaintiff's Amended Complaint (ECF No. 87) in its entirety.[4]

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

October 25, 2022
Anderson, South Carolina

---

[4] Defendants' pending motions to dismiss pursuant to Rule 12(b)(6) (ECF Nos. 91; 92) are **DENIED as moot.**